UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY HERMANN,

Plaintiff,

-against-

UNILY INC., *formerly known as* BRIGHTSTARR US INC.,

Defendant.

25-CV-04431 (MKV) (RFT)

OPINION & ORDER

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Plaintiff Jeffrey Hermann brought suit against Defendant Unily Inc. for disability discrimination and retaliation under federal law. (ECF 1, Compl. ¶¶ 78-97.) Pending before the Court is Plaintiff's motion for spoliation sanctions against Defendant under Rules 37(c)(1) and 37(e)(1), (2) of the Federal Rules of Civil Procedure (the "Spoliation Motion") (ECF 39). Plaintiff contends that Defendant intentionally failed (i) to meet its obligations under Rule 26(a) and (e) by failing to disclose and search for relevant documents, and (ii) to put a litigation hold in place after Plaintiff informed Defendant of his intent to sue for employment discrimination, which led to the loss of several categories of electronically stored information ("ESI") relevant to Plaintiff's claims. (ECF 42, Pl.'s Mem. at 3-5, 8, 11-12.) Plaintiff seeks the following relief:

1. That pursuant to Rule 37(e)(1), Defendant be precluded from offering evidence or argument that Plaintiff refused or failed to prospect business opportunities, or that any such alleged failure or refusal justified Plaintiff's performance improvement plan ("PIP") or termination;
2. That pursuant to Rule 37(c)(1), Defendant be precluded from offering evidence or argument that any opportunity marked as lost in Plaintiff's PIP was lost because of Plaintiff;

3. That pursuant to Rule 37(c)(1), Defendant (but not Plaintiff) be precluded from offering evidence or argument that it analyzed whether Plaintiff's business quotas were attainable;
4. That pursuant to Rule 37(e)(1), Defendant be precluded from asserting an after-acquired evidence defense or any equivalent limitation-of-remedies theory premised on selectively preserved documents;
5. That pursuant to Rule 37(c)(1), Defendant (but not Plaintiff) be precluded from using at trial any document from any source Plaintiff says that Defendant neglected to search during discovery – specifically, Microsoft Teams, text messages, and local device files, and the files of Sam Miller, Plaintiff's business development representative at Defendant; and
6. That pursuant to Rule 37(e)(2), the jury be instructed that it must presume that the following lost information was unfavorable to Defendant: (i) the contents of Plaintiff's employer-issued laptop and its remote backups; (ii) the recording of Plaintiff's 42-minute complaint call to human resources on May 31, 2023, together with the electronically stored or transmitted materials reflecting, summarizing, transmitting, attaching, or responding to Plaintiff's May 31, 2023 complaint to human resources; (iii) the Microsoft Teams messages exchanged from May 17, 2023 through and after Plaintiff's termination; (iv) the contemporaneous notes and Teams chat that Plaintiff's manager, Neil Miklusak, claimed to have made concerning Plaintiff's performance and Plaintiff's alleged refusal to prospect business opportunities; and (v) quarterly business reviews of account executives who were his comparators.[1]

[1] Plaintiff asks that the instruction be substantially in the following form, subject to settling at the charge conference: "Unily had a duty to preserve [the laptop and its backups/the

To the extent that the Court declines to impose the requested mandatory adverse inferences, Plaintiff asks in the alternative pursuant to Rule 37(e)(1) that he be permitted to introduce at trial evidence of the loss of ESI and argue the significance of the loss to the factfinder, and that the Court instruct the jury that it may consider such loss, together with all other evidence, in reaching its verdict.

For the reasons set forth below, the Spoliation Motion is **DENIED IN PART** and **GRANTED IN PART**, as set forth herein.[2]

May 31, 2023 recorded HR call/the Microsoft Teams messages/Miklusak's notes and chat concerning Plaintiff's performance and prospecting], and failed to do so. You must presume that this lost information was unfavorable to Unily." (ECF 43, Pl.'s Proposed Order at 36.) Plaintiff does not expressly group comparators' quarterly business reviews with the ESI he claims was lost, but in his proposed order, he states that he seeks relief under Rule 37(e)(1) "as to any category of lost information for which the mandatory adverse inference recommended below is not imposed, including the Q[uarterly ]B[usiness ]R[eview] materials . . . ." (*Id.* at 35.) Accordingly, I group the comparators' quarterly business reviews with the other categories of ESI that Plaintiff contends was lost.

[2] Orders imposing discovery sanctions such as awards of attorneys' fees, preclusion of evidence, and a finding of adverse inference are ordinarily considered non-dispositive and therefore fall within the grant of Rule 72(a). *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 59 (S.D.N.Y. 2020); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 492 (S.D.N.Y. 2022) (stating that the sanctions sought, including adverse inferences, were not dispositive and could thus be ordered by a magistrate judge).

# I.

## Factual Background[3]

Plaintiff was hired as an account executive by Defendant on February 14, 2022. (*See* ECF 1, Compl. ¶ 22.) He suffered a heart attack and had open-heart surgery in October 2022 and remained on leave until January 6, 2023. (*See id.* ¶¶ 26-27.) While Plaintiff was out, Unily transferred every business lead, or opportunity, in his pipeline to other account executives and reassigned one of his two territories (hospitality); Plaintiff alleges that he returned to depleted sources of new business but with no adjustment to his sales quotas. (*See id.* ¶¶ 36-38.)

On May 30, 2023, Miklusak told Plaintiff during a call that Plaintiff was being placed on a PIP, and Plaintiff complained that he was being treated differently due to his disability. (*See* ECF 40-4, May 30, 2023 Call Tr. at 11, 13-14, 19:22-24, 28:11-14, 32: 19-25.) Following the call with Miklusak, on May 31, 2023, Plaintiff complained to the head of human resources, Alexa Perlstein, in a recorded 42-two-minute call; the parties dispute whether Plaintiff linked his complaints to his disability. (*Compare* ECF 1, Compl. ¶¶ 62-65 *and* ECF 42, Pl.'s Mem. at 2 ("Beginning May 30, 2023, Plaintiff complained [on three separate occasions] that he was held to a different standard because [of his disability].") *with* ECF 47, Def.'s Mem. at 9 *and* ECF 49, Def.'s Proposed Order ¶ 28 ("After he was told that he was being terminated, Plaintiff made allegations of discrimination, retaliation and constructive dismissal for the first time.").)

---

[3] Any facts not set out in the Complaint are taken from the parties' filings in connection with the Spoliation Motion papers, including attachments. *See Suriel v. Port Auth. of New York & New Jersey*, No. 19-CV-3867 (PKC) (ST), 2023 WL 2727522, at *1 n.2 (E.D.N.Y. Mar. 31, 2023).

Plaintiff complained again on June 16, 2023 on a call with Perlstein and General Counsel Ben Oakley, during which Plaintiff was terminated; Plaintiff says he asserted that that the PIP was discriminatory based on his disability and retaliatory and that Defendant would be "hearing from" his lawyer, "the most prominent employee litigator in the United States"; Defendant terminated Plaintiff during this call. (ECF 40-12, June 16, 2023 Call Tr. at 10, 18-19, 21.)

## II.

## Procedural History

On or around April 6, 2024, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging claims under the Americans with Disabilities Act ("ADA"). (*See* ECF 1, Compl. ¶ 8.) On February 26, 2025, Plaintiff received a Notice of Right to Sue from the EEOC. (*See id.* ¶ 9.) Plaintiff filed suit on May 27, 2025, alleging disability discrimination and retaliation under the ADA. (*See id.* ¶¶ 78-97.) On July 28, 2025, Defendant filed its Answer (ECF 8). On November 17, 2025, the case was referred to me for general pretrial matters, including non-dispositive motions. (*See* ECF 18, Order of Ref.)

On June 30, 2026, Plaintiff filed the Spoliation Motion (ECF 39), supported by the Lucas Declaration (ECF 40), which attached exhibits, the Declaration of Jeffrey Hermann (ECF 41), and a memorandum of law (ECF 42). Defendant filed its memorandum of law in opposition on August 18, 2026 (ECF 47), supported by the O'Sullivan Declaration (ECF 48). Plaintiff filed a reply in further support on August 25, 2026 (ECF 50), supported by a Lucas Affirmation (ECF 51). No party requested an evidentiary hearing.

**III.**

**Plaintiff's Spoliation Allegations**

Perlstein's contemporaneous summary of the June 16, 2023 call reflected that Plaintiff had "relayed a slew of HR trigger words such as retaliation, discrimination, disability" and "flatly stated that we will be hearing from his lawyer, the best litigator in the country." (ECF 40-11, June 16, 2023 Email from Perlstein to Miklusak, copied to Oakley at Unily001371.) Her summary was extensive and asked Oakley to provide any details that she had missed. (*See id.* at Unily001370.) It provided her version of the background leading up to the call – that she was working with Plaintiff to update his PIP; that Defendant was willing to accept edits to the PIP from Plaintiff; and that Plaintiff's revisions "went out of his scope and out of the spirit of partnership to create [edits to the PIP that have] no repercussions should his performance fail to improve." (*Id.*) Perlstein included a screenshot of her Teams messages with Plaintiff about the updated PIP document that Plaintiff was editing. (*See id.*) The tenor of Perlstein's recitation of the background strongly suggests she was thinking about the likelihood of future litigation.

So too does her summary of the call itself. Perlstein went into detail about what she characterized as Plaintiff's unprofessional behavior, including his interruptions of her and Oakley during the call. (*See id.* at Unily001371.) She noted that "Jeff repeatedly looked to the side where someone was clearly standing by as a witness" and stated that Plaintiff used words such as "I would like this on the record" to suggest that he may have been recording the call and may have already gotten guidance from counsel. (*Id.*)

Miklusak similarly prepared a summary of at least one of his conversations with Plaintiff after he put Plaintiff on a PIP on May 30, 2023. (*See* ECF 40-5, May 30, 2023 Email from

Miklusak Summarizing PIP Conversations, as Forwarded to Perlstein at UNILY001296-98.) Not only did he send these notes to Chief Revenue Officer, Russell Webb, on May 30, 2023, but he also forwarded the notes to Perlstein, saying that he "thought the summaries would be helpful for [her] to have." (*Id.* at UNILY001296.) His preparation of a summary and choice to share the summary with Webb and Perlstein strongly support an inference that Miklusak was aware of the likelihood of litigation even before Plaintiff was terminated.

Notwithstanding that Perlstein and Miklusak appear to have been aware that litigation was likely and notwithstanding Plaintiff's express statement that he intended to sue Defendant for employment discrimination and retaliation, Defendant took no steps to preserve ESI for 76 days, until August 31, 2023, when Oakley first circulated a litigation hold to David King-Harris, to whom Plaintiff reported before the heart attack, Miklusak, Webb, Perlstein, and Chrissy Stapleton, copying Chris Jackman; the email directed preservation of "[a]ny contemporaneous notes taken in meetings, in calls etc." (ECF 40-15, Aug. 31, 2023 email chain at UNILY001361.)[4] In the same exchange, IT manager James Heathcote confirmed that "across the organisation we have the capabilities" to preserve and warned that "Teams conversations are auto deleted." (*Id.* at UNILY001360.)

Despite Oakley's litigation hold email being addressed to multiple employees and referencing many types of files, Heathcote placed a litigation hold on Plaintiff's e-mailbox but did not take steps to preserve any other types of Plaintiff's files, such as Teams messages or notes; Heathcote did not turn off auto-delete functions for those other categories of files, even

4 The roles at Defendant of Stapleton and Jackman are unclear from the parties' submissions.

though email was not the company's primary method of communicating. (ECF 42, Pl.'s Mem. at 8; ECF 40-17, Andra Bot 30(b)(6) Dep. Tr. at 18:7-12; ECF 51-1, Perlstein Dep. Tr. at 32:23-25.) Nor did Defendant place a litigation hold on certain personnel Plaintiff suggests would have had documents supporting his claims, including Defendant's head of sales, Anna Fisher-Jeffes, and Miller. (ECF 40-15, Aug. 31, 2023 email chain at UNILY001360.) Plaintiff deduces that Defendant took no steps to preserve documents after issuing the litigation hold, other than the contents of Plaintiff's e-mailbox (ECF 42, Pl.'s Mem. at 8), presumably based on the absence of responsive documents produced from the files of King-Harris, Miklusak, Webb, Perlstein, and Stapleton, or from Fisher-Jeffes, Miller, and comparator account executives.[5]

Plaintiff argues that as a result of Defendant's failure to promptly and properly implement a litigation hold, the following categories of ESI were lost, and Plaintiff asserts that these materials cannot be obtained or reconstructed from other sources: (i) Plaintiff's laptop, which was wiped under routine policy after Perlstein cut his access, and OneDrive backups of the laptop, which were auto-deleted; (ii) the 42-minute recording of Plaintiff's May 31, 2023 complaint to human resources, which was auto-deleted after a year; (iii) Teams messages concerning Plaintiff's performance, the PIP, and his termination, which were auto-deleted after thirty days, save the exchanges Perlstein pasted into her summary of Plaintiff's termination; (iv) Miklusak's notes and chat, which Miklusak claimed substantiated the charge that Plaintiff

---

[5] Bot testified that she had asked Miller to search his files and that he sent her materials that she forwarded to outside counsel. (*See* ECF 48-2, Bot. Dep. Tr. at 12:4-19.) However, since Miller was not placed on a litigation hold, it is not clear that all relevant documents continued to exist at the time he performed his search.

refused to prospect for new business, and (v) quarterly business reviews for all Plaintiff's comparator account executives, which Defendant was unable to locate due to the comparator account executives' departures and Defendant's document retention policies.

**IV.**

**<u>Plaintiff's Spoliation Motion</u>**

## A. My Authority To Address the Spoliation Motion

This action has been referred to me for general pretrial management pursuant to 28 U.S.C § 636(b) and Fed. R. Civ. P. 72(a). (*See* ECF 18, Order of Ref.) Accordingly, I have broad authority to impose discovery sanctions. *See Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 492 (S.D.N.Y. 2022); *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *4 (S.D.N.Y. Mar. 30, 2021).

Orders imposing discovery sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction disposes of a claim." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017), *adopted by*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).[6] "A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the sanction the magistrate judge actually imposes." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.,* 337 F.R.D. 47, 59 (S.D.N.Y. 2020) (sanctions under Rule 37(e)); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto*

[6] Unless otherwise indicated, this opinion and order omits internal quotation marks and citations from quotations.

*Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) (sanctions under Rule 37(b); *Taylor v. New York State Off. for People With Developmental Disabilities*, No. 13-CV-740 (NAM) (CFH), 2016 WL 2858856, at *15 (N.D.N.Y. May 13, 2016) (sanctions under Rule 37(c)).

The discovery sanctions I am awarding do not "fully dispose of a claim or defense." *Seena Int'l Inc. v. One Step Up, Ltd.*, No. 15-CV-1095 (PKC) (BCM), 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016); *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09-CV-10004 (LAK) (JCF), 2011 WL 1453797, at *4 (S.D.N.Y. Apr. 11, 2011) (preclusion of evidence sanction non-dispositive); *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 247 n.1 (S.D.N.Y. 2010) (same); *Tian v. Star Nail Salon, Inc.*, No. 20-CV-5263 (FB) (SIL), 2022 WL 20598558, at *5 (E.D.N.Y. May 31, 2022) (adverse inference instruction sanction non-dispositive); *Keurig,* 341 F.R.D. at 492 (stating that the sanctions sought, including an adverse inference, were not dispositive). Therefore, under the referral for general pretrial supervision, it is appropriate for me to resolve the Spoliation Motion "in the first instance." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018).

Nor is a hearing necessary – and no party has requested one. In *Jay v. Spectrum Brands Holdings,* this Court explained: "Although a court may, in its discretion, hold a hearing on a sanctions motion brought under Rule 37, it is appropriate to refrain from holding such a hearing where a thorough written record has been presented and the respective positions of the parties are clear[.]" No. 13-CV-8137 (LTS) (DF), 2015 WL 6437581, at *6 (S.D.N.Y. Oct. 20, 2015). The *Jay* Court concluded that a hearing is required only in situations where the Court imposes sanctions that require a finding of willfulness. *See id.*

**B. Sanctions Pursuant to Federal Rule 37(e) for Spoliation of ESI**

1. Legal Standards

A 2015 amendment to the Federal Rules of Civil Procedure replaced former Rule 37(e) with language specifically addressing spoliation of ESI: "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court" may, on a finding of prejudice, "order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). Upon a "finding that the party acted with the intent to deprive another party of the information's use in the litigation[,]" a court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). Even when a court finds an intent to deprive, the court may issue a lesser sanction. *See, e.g., Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-1254 (SHS) (OTW), 2019 WL 6838672, at *6 (S.D.N.Y. Dec. 16, 2019)

Sanctioning a party pursuant to Federal Rule 37(e) "requires a three-part inquiry: (1) whether the party failed to take reasonable steps to preserve [ESI] that should have been preserved in the anticipation or conduct of litigation; (2) whether the loss of ESI caused prejudice to another party such that the Court may order measures no greater than necessary to cure the prejudice; and (3) whether the destroying party acted with the intent to deprive another party of the information's use in the litigation." *Castro v. Smith*, No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *5, (S.D.N.Y. Aug. 22, 2023).

The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the district court, *see West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999), and is assessed on a case-by-case basis. *See United States v. Grammatikos,* 633 F.2d 1013, 1019-20 (2d Cir. 1980).

a. Duty To Preserve and Take Reasonable Steps

In evaluating a party's duty to preserve, courts are required to conduct a two-part inquiry, assessing: (1) "when does the duty to preserve attach, and [(2)] what evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); *see also EBIN New York, Inc. v. SIC Enter., Inc.*, No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, at *6 (E.D.N.Y. Sept. 23, 2022) ("When determining whether a duty to preserve ESI exists and when that duty arose, the Court should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant.") (quoting Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendments). A party's duty to preserve can arise "[e]ven before formal initiation of an action, [o]nce a party reasonably anticipates litigation." *Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17-CV-1927 (PAE), 2018 WL 6191039, at * 7 (S.D.N.Y. Nov. 28, 2018); *see also Karsch v. Blink Health Ltd*., No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *18 (S.D.N.Y. June 20, 2019); *Turner v. Hudson Transit Lines, Inc*., 142 F.R.D. 68, 72 (S.D.N.Y. 1991). The question whether litigation reasonably was anticipated is an objective one, asking not whether the party in fact foresaw litigation, but whether a reasonable party in the same factual circumstances would have foreseen litigation. *See Mastr Adjustable Rate Mort. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.,* 295 F.R.D. 77, 82 (S.D.N.Y. 2013), *adopted by* 2013 WL 6840282 (S.D.N.Y. Dec. 27, 2013).

The duty to preserve encompasses relevant evidence. *See Turner*, 142 F.R.D. at 72-73. "Once the obligation to preserve relevant ESI attaches, the party in possession of that ESI must take reasonable steps to preserve it." *Karsch*, 2019 WL 2708125, at *19. "To fulfill its obligation to preserve evidence a litigant must take affirmative steps to prevent inadvertent spoliation." *Raymond v. City of N.Y.*, No. 15-CV-6885 (LTS) (SLC), 2020 WL 1067482, at *9 (S.D.N.Y. Mar. 5, 2020).

Therefore, "[d]iscovery from key players in the litigation should be preserved." *Id.* "At the outset of the litigation, each party must identify all sources of potentially relevant evidence and implement a litigation hold suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y.), *adopted by* 271 F.R.D. 55 (S.D.N.Y. 2010). "Counsel cannot just implement a litigation hold and then sit on his hands, hoping that parties retain and produce all relevant information." *Ryan v. Rock Grp., N.Y. Corp.*, No. 18-CV-2600 (GHW), 2019 WL 6841874, at *4 (S.D.N.Y. Dec. 16, 2019). The Federal Rules "obligate counsel to monitor compliance so that all sources of discoverable information are identified and searched." *Id*.

b. Prejudice

Sanctions under Rule 37(e)(1) "may only be imposed [on] a finding of prejudice to the moving party[.]" *Lokai Holdings*, 2018 WL 1512055, at *7, *12. Neither party has "a burden of proving or disproving prejudice," and Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 amendments.

Some courts have found prejudice based on the moving party's showing that the spoliated evidence "would be helpful to them in connection with establishing several elements of their . . . claims." *Doubleline Cap*., 2021 WL 1191527, at *7. The moving party need not establish the loss of a "smoking gun," and "[i]t is sufficient if the existing evidence plausibly suggests that the spoliated ESI could support the moving party's case." *Karsch*, 2019 WL 2708125, at *21; *see also Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430-31 (W.D.N.Y. 2017) (finding that moving party had established prejudice by making "plausible, concrete suggestions as to what [the destroyed] evidence might have been"); *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 387-88 (S.D.N.Y. 2025) (finding prejudice due to lost text messages "because it is more than plausible that such text messages would have supported [the defendant's] defenses" where the defendant did not have access to the lost text messages and they "might have undermined [the plaintiff's] version of events").

Of course, "[p]roof of relevance does not necessarily equal proof of prejudice." *Karsch*, 2019 WL 2708125, at *20. And sanctions are permissible under Rule 37(e) for spoliation of ESI only if the ESI "cannot be restored or replaced through additional discovery." *Id.* at *13. Messages sent to or from a custodian are not "permanently lost or unrecoverable" if they are replaceable through other custodians. *Karsch*, 2019 WL 2708125, at *17 n.21; *see also Morgan v. Art Found. Ltd. v. McKenzie*, Nos. 18-CV-4438 & 18-CV-8231 (AT) (BCM), 2020 WL 5836438, at *19 (S.D.N.Y. Sept. 30, 2020); *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 359 (S.D.N.Y. 2012).

Courts have found that, besides evidentiary prejudice, economic prejudice can support sanctions under Rule 37(e). *See Karsch*, 2019 WL 2708125, at *25 (citing "economic prejudice"

as a basis for imposing curative measures under Rule 37(e)(1)); *see also*, *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (finding that the defendants had been prejudiced by having "the burden and expense of ferreting out [ ] [the plaintiff's] malfeasance and seeking relief from the Court").

c. Intent To Deprive

As to the third step, the intent standard for imposing the "particularly harsh" sanctions under Rule 37(e)(2), *Lokai Holdings*, 2018 WL 1512055, at *8, "is both stringent and specific." *Doubleline Cap*., 2021 WL 1191527, at *8. Rule 37(e)(2) contemplates "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Leidig v. Buzzfeed, Inc*., No. 16-CV-0542 (VM) (GWG), 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017). If an intent to deprive is found, "no separate showing of prejudice is required, because the finding of intent [to deprive] . . . support[s] . . . an inference that the opposing party was prejudiced by the loss of information." *Doubleline Cap*., 2021 WL 1191527, at *5.

The moving party bears the burden of showing "that the spoliating party acted with the intent to deprive, not merely the intent to destroy." *Id*. at *8. "An intent to deprive can be found either from a conscious act of destruction or a conscious dereliction of a known duty to preserve electronic data." *Fashion Exch.*, 2019 WL 6838672, at *5. An intent to deprive may be demonstrated through circumstantial evidence. *See, e.g., Lokai Holdings*, 2018 WL 1512055, at *16 (explaining that a "court may infer that a party acted with an intent to deprive on the basis of circumstantial evidence"); *CAT3*, 164 F. Supp. 3d at 500 (noting that even "standing alone," circumstantial evidence may support a finding of an intent to deprive). The requisite culpable

intent may be shown by grossly negligent behavior. *See Moody*, 271 F. Supp. 3d at 431-32 (finding culpable intent where the defendants' failure to preserve evidence over a period of years was "so stunningly derelict as to evince intentionality"); *Fashion Exch.,* 2019 WL 6838672, at *5 ("While the degree of negligence and/or incompetence in discovery displayed by Plaintiff in this suit is stunning, it does not rise to the level of being so stunningly derelict that it is akin to an intent to deprive.").

Courts in this Circuit have considered four factors in determining whether a party acted with the intent to deprive:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Charlestown Cap. Advisors*., 337 F.R.D. at 67.

d. Burden of Proof

Traditionally, "[a] party seeking spoliation sanctions ha[d] the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017). However, the current version of Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other." *Charlestown Cap.*, 337 F.R.D. at 65 (quoting Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendments). "It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive." *Charlestown Cap.,* 337 F.R.D. at 66. The Second Circuit recently held that party seeking sanctions under Rule 37(e)(2) must "establish the requisite elements –

including that the party act with intent to deprive – by a preponderance of the evidence." *Hoffer v. Tellone* 128 F.4th 433, 439 (2d Cir. 2025).

e. Types of Sanctions

"In situations where sanctions are warranted, district courts have broad discretion in crafting [a proper] sanction for spoliation." *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 (JS) (AKT), 2014 WL 4966119, at *5 (E.D.N.Y. Sept. 30, 2014); see also *Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (collecting cases describing courts' "wide discretion" to fashion appropriate sanctions). The sanctions available under Rule 37(e)(1) on a showing of prejudice may be "no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). If the prejudice is additional time and expense incurred in obtaining discovery, "monetary sanctions may be a sufficient cure." *Doubleline Cap*., 2021 WL 1191527, at *5. More "serious measures" include preclusion of evidence, "permitting the parties to present evidence and argument to the jury regarding the loss of information," and instructions to the jury as to how to consider such evidence. *Id.* (quoting Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 amendments).

The "particularly harsh" sanctions in Rule 37(e)(2), including adverse inference instructions, require proof of an "intent to deprive," a showing that on its own "support[s] . . . an inference that the opposing party was prejudiced by the loss of information" and therefore does not require an independent showing of prejudice. *Lokai Holdings*, 2018 WL 1512055, at *8 (quoting Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendments). An adverse inference instruction either requires or permits the jury to make "an inference that the evidence

would have been unfavorable to the party responsible for its destruction." *Zubulake*, 220 F.R.D. at 216.[7]

The adverse inference is meant to restore a prejudiced party to the "position [it] would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch v. United States*, 150 F.3d 120, 126 (2d Cir. 1998). An adverse inference instruction is "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008). "[W]ithout some proof that the [spoliating party]'s actions created an unfair evidentiary imbalance, an adverse inference is not appropriate." *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009). In particular, a mandatory adverse inference instruction is appropriate if "the offending party acted in bad faith or at least with gross negligence . . . . In contrast, a permissive adverse-inference instruction does not amount to a sanction[,]" *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283, 2014 WL 904595, at *4 (S.D.N.Y. Mar. 4, 2012); "[i]t is no more than an explanation of the jury's fact-finding powers." *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013).

Finally, in addition to any other sanctions imposed under Rule 37(e), "a court has the discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings*, 2018 WL 1512055, at *9; *see*

---

[7] There are two different types of adverse inference instructions: a mandatory adverse inference and a permissive adverse inference. *See* Fed. R. Civ. P. 37(e)(2)(B); *see also Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013). "A mandatory adverse inference is where a court advises the jury that it should draw an adverse inference. In contrast, a permissive adverse inference advises the jury that finding certain facts may support further findings of fact." *Giordano v. Rizzo, GiGiacco, Hern & Baniewicz, CPAs, PLLC*, No. 15-12091, 2021 WL 4189696, at *13 (Bankr. N.D.N.Y. Sept. 14, 2021).

*also Klipsch Grp., Inc. v. ePro E-Com. Ltd.*, 880 F.3d 620, 633-35 (2d Cir. 2018) (affirming an award of attorney's fees that were reasonably incurred as a result of Defendant's misconduct).

2. Analysis

a. Duty To Preserve and Take Reasonable Steps

Plaintiff argues that Defendant's preservation duty arose on June 16, 2023, the day of his termination, on the basis of his threat to sue. (ECF 42, Pl.'s Mem. at 7.) Defendant responds that its obligation to preserve documents did not arise until August 23, 2023, when Plaintiff's counsel sent a litigation letter; Defendant explains that "people make [litigation] threats all the time" that do not come to fruition and that it did not reasonably anticipate litigation until it received the letter from Plaintiff's counsel. (ECF 47, Def.'s Opp. at 5.)

Defendant supports its position with a case in which the court concluded that an employer was not placed on notice by a former employee's letters stating that she believed her firing was biased and unlawful and that the preservation duty arose only when her counsel sent a letter expressly stating that she planned to sue. (*See id*. at 5 (citing *Europe v. Equinox Holdings, Inc.,* 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022)).) Defendant's reliance on *Europe* is misplaced, because in that case, the Court concluded that the duty preserve arose when the former employee actually threatened to sue; the earlier letters on which the plaintiff sought to rely discussed the plaintiff's belief that her termination had been unlawful but did not mention a future lawsuit. *See id.* at 173. Here, by contrast, Plaintiff expressly threatened to sue on the day of his termination, which triggered Defendant's preservation obligations. *See, e.g., McConkey v. Churchill Sch. & Ctr.*, No. 24-CV-6091 (LJL), 2026 WL 1328605, at *14 (S.D.N.Y. May 13, 2026) (finding that the employer's preservation obligation arose when it terminated the plaintiff,

because the plaintiff said he would sue when fired, and holding that the employer "need not have received a written letter from counsel in order to have anticipated that [the employee] would sue").

Once Defendant's obligation to begin preserving documents arose on June 16, 2026, it was obligated to take reasonable steps to preserve relevant ESI and prevent inadvertent spoliation. *See, e.g., Karsch,* 2019 WL 2708125, at *19; *Turner*, 142 F.R.D. at 72-73. At a minimum, at that time, Defendant should have (i) placed a litigation hold on the Plaintiff's files (not just his email box); (ii) followed through on the instruction to place a litigation hold on Perlstein and Miklusak by preserving their files (including emails and other types of files), including by instructing those custodians to preserve their documents and disabling the auto-delete functions for their files; (iii) safely stored the recording of Plaintiff's May 31, 2023 call with Perlstein in a location that was not subject to auto-delete protocols; and (iv) placing a litigation hold on the files (including emails and other files) of comparator account executives, including by instructing those custodians to preserve their documents and disabling the auto-delete functions for their files. *See, e.g., Keurig Green Mountain,* 341 F.R.D. at 505-05.

b. Prejudice

Plaintiff identifies five categories of ESI he claims was lost due to Defendant's failure to preserve and is unavailable from other custodians. I conclude that Plaintiff has demonstrated prejudice with regard to four of those categories.

- **Plaintiff's laptop and OneDrive backups**. Plaintiff contends that his laptop had ESI reflecting his prospecting efforts (ECF 42, Pl.'s Mem. at 7), which would contradict Defendant's assertion that his termination was based at least in part on his failure to prospect as opposed to his heart condition or his protected activity (*see* ECF 47, Def.'s Opp. at 8-9). The laptop was wiped upon termination, and Defendant took no steps to

preserve the laptop's OneDrive, which was auto-deleted around thirty-five days after Plaintiff's termination. (ECF 40-16, Heathcote Dep. Tr. at 28:24-29:19.) Defendant also did not take steps until after the litigation commenced to request the backup from Microsoft, which would have been available for another fourteen days following the deletion of the OneDrive. (*Id.* at 29:13-30:12.) Defendant contends that Plaintiff was responsible for the loss of this ESI because he held on to the laptop (ECF 47, Def.'s Opp. at 7-8), but Defendant's position is refuted by its own IT witness, who testified that Defendant "had a policy of remotely deleting the contents of laptops for employees, upon separation from Unily," and that this "policy would have been applied with respect to the contents of [Plaintiff's] laptops." (ECF 40-16, Heathcote Dep. Tr. at 32:7-18.) And Defendant's argument that Plaintiff has failed to identify the lost ESI with sufficient specificity (ECF 47, Def.'s Opp. at 1-2, 10) likewise falls short – "placing the burden of proving prejudice on the party that did not lose the information may be unfair." *Oakley*, 792 F. Supp. 3d at 387. Plaintiff has sufficiently demonstrated prejudice in connection with the loss of ESI on his laptop by stating that the computer contained files reflecting his prospecting efforts.

- **The 42-minute recording of Plaintiff's May 31, 2023 call to Perlstein.** Plaintiff argues that the auto-deleted recording of his May 31, 2023 call to human resources was the only conclusive proof of what he said to Perlstein, and therefore of his protected activity, sixteen days before being discharged. (ECF 42, Pl.'s Mem. at 4.) Defendant counters that each party can testify to the contents of the call. (ECF 47, Def.'s Opp. at 9.) Perlstein disputes Plaintiff's account of the call, taking the position that Plaintiff did not complain of disability discrimination or retaliation until after he was terminated. (*Id.* (describing Plaintiff's complaints as "about being issued a PIP" rather than about disability discrimination or retaliation); *see also* ECF 49 ¶ 28, Def.'s Proposed Order (stating that Plaintiff first made allegations of discrimination, retaliation, and constructive dismissal in the June 16, 2023 call terminating his employment).) The deletion of the recording has deprived Plaintiff of the objective record of the call. Plaintiff has adequately demonstrated prejudice in connection with the loss of the recording of the call.

- **Teams messages concerning Plaintiff's performance, the PIP, and his termination**. Plaintiff complains that messages about his performance were auto-deleted after thirty days, so that the only remaining such messages are those that Perlstein chose to paste into her summary of Plaintiff's termination. (ECF 42, Pl.'s Mem. at 4.) However, Plaintiff has made no "plausible, concrete suggestions as to what [the destroyed] evidence might have been," *Moody*, 271 F. Supp. 3d at 431-32, and so Plaintiff has not sufficiently demonstrated prejudice in connection with the loss of those Teams messages. It does not necessarily follow that just because only some of the Teams messages were saved, other Teams messages would have included views that supported Plaintiff's claims. *See Karsch*, 2019 WL 2708125, at *21 (explaining that to show prejudice the "existing evidence" must "suggest that the spoliated ESI could support the moving party's case"). Plaintiff's application for sanctions in connection with the loss of those Teams messages is therefore **DENIED**.

- **Miklusak's notes and chat**. Plaintiff argues that Miklusak told him that he had contemporaneous notes of a conversation in which Plaintiff refused to prospect – something Plaintiff denies saying – but Miklusak's notes and chat were not preserved. (ECF 42, Pl.'s Mem. at 4.) Defendant argues that it is unclear what Plaintiff means when he refers to a chat (Def.'s Mem. at 8), but it appears from context that he means a Teams message. Defendant also argues that Miklusak's notes relating to Plaintiff's performance were "recreated in the PIP" (ECF 47, Def.'s Opp. at 7-8), a point that Plaintiff disputes (ECF 50, Pl.'s Reply at 10-11); even if they were recreated, Plaintiff would still be prejudiced in that he is unable to examine whether the underlying notes of or message about any conversation between him and Miklusak (as opposed to what was pasted into the PIP) suggested that Plaintiff refused to prospect, categorically failed to prospect, or that any such alleged refusal or failure justified the PIP or termination. (*See id.*)

- **Quarterly business reviews of comparator account executives**. Plaintiff has provided evidence that Defendant prepared quarterly business reviews of account executives who were his comparators and that Defendant was able to produce those documents for only two comparators, because of the account executives' departures and Defendant's document retention policies. (*See* ECF 40-25, Emails from Cara O'Sullivan to Scott A. Lucas.) Plaintiffs in employment discrimination cases frequently use comparator evidence to demonstrate disparate treatment. While Defendant preserved comparators' sales metrics, Plaintiff argues he could have tested Defendant's assertion that he performed inadequately by comparing his evaluations in quarterly business reviews to the narrative content of comparators' quarterly business reviews. Plaintiff has sufficiently demonstrated prejudice in connection with the loss of electronically stored versions of comparators' quarterly business reviews.

c. Intent To Deprive and Sanctions Under Rule 37(e)(2)

Pursuant to Rule 37(e)(2), Plaintiff asks that the Court instruct the jury that it must presume that the five categories of lost ESI – the contents of Plaintiff's laptop and its remote backup, the recording of the his complaint call of May 31, 2023, the Microsoft Teams messages exchanged from May 17, 2023 until after his termination, the contemporaneous notes and Teams chat that Miklusak claimed to have made concerning Plaintiff's alleged refusal to prospect business opportunities, and comparators' quarterly business reviews – were unfavorable to Defendant. (ECF 42, Pl.'s Mem. at 5.) I therefore address whether Plaintiff has

shown by a preponderance that Defendant acted with an intent to deprive him of evidence, as required for the severe mandatory adverse inference sanction he seeks under Rule 37(e)(2).

Plaintiff contends that Defendant's failure to take reasonable steps to preserve ESI supports a finding of intent to deprive because Defendant "consciously declined" to comply with a known duty to preserve electronic data. (ECF 42, Pl.'s Mem. at 7-8.) Plaintiff goes on to argue that Defendant's "shifting explanations" for the failure to preserve the ESI "confirm the inference" that Defendant acted with an intent to deprive: Plaintiff characterizes Defendant's position as "deny[ing] that it owed a duty and insist[ing] that it discharged one." (ECF 42, Pl.'s Mem. at 9.) I read Perlstein's testimony differently than does Plaintiff: she denied there was a duty to preserve until she received a letter from Plaintiff's counsel and said that once she received that letter, she complied with the preservation obligation. (ECF 40-1, Perlstein Dep. Tr. at 100:2-7, 100:22-101:2.)

Nevertheless, like Plaintiff, I conclude that Defendant was stunningly derelict in carrying out its document preservation obligations. It was unreasonable not to put a litigation hold in place on June 16, 2023, when Plaintiff threatened litigation. It was particularly unreasonable to wipe Plaintiff's laptop, even if doing so was Defendant's usual policy on an employee's separation.

Defendant's actions when it finally did get around to putting a hold in place fell far short of what a reasonable company in its position would have done. It was unreasonable to limit the hold on Plaintiff's files to his email box, rather than including all types of files, especially given that email was not Defendant's primary method of communication (ECF 51-1, Perlstein Dep. Tr. at 32:23-25). It was unreasonable not to take immediate steps to try to restore the data from

Plaintiff's laptop that had been wiped upon his separation. It was unreasonable to fail to ensure that the litigation hold requested for King-Harris, Miklusak, Webb, Perlstein, and Stapleton covered all types of files and was complied with, including by confirming that those custodians were preserving their files and that auto-delete functions were suspended. It was unreasonable not to include Plaintiff's account executive comparators in a litigation hold. And it was unreasonable not to ensure that the auto-delete function was suspended for materials that Defendant intended to preserve, including the recording of the May 31, 2023 call with Perlstein.[8]

Defendant's lackadaisical approach to document preservation presents a close case on the question of intent to deprive. In evaluating Defendant's intent, I am mindful of the fourth consideration set out in *Charlestown Capital* – whether the reason for the loss cannot be credibly explained as not involving bad faith. *See* 337 F.R.D. at 67. Here, even if Defendant had appropriately applied a litigation hold to employees beyond just Plaintiff and had appropriately included all types of files rather than just email, most of the ESI identified by Plaintiff would still have been lost due to a failure to suspend auto-delete procedures. That failure is susceptible to more than one interpretation, including that Defendant did not act in bad faith but was incompetent, which militates against finding an intent to deprive. *See Lokai Holdings*, 2018 WL

[8] I do not conclude that Plaintiff has demonstrated that it was unreasonable of Defendant not to include Miller and Fisher-Jeffes in a litigation hold, because Plaintiff has not provided any description of the information he believes would have been found in those employees' files. *See Moody*, 271 F. Supp. 3d at 430 (explaining that to establish prejudice the moving party must make "plausible, concrete suggestions as to what [the destroyed] evidence might have been"); *Keurig Green Mountain*, 341 F.R.D. at 495 (same). The only information Plaintiff provides about those two individuals is their roles at Defendant, which is insufficient to demonstrate prejudice.

1512055, at *16 (declining sanctions under Rule 30(e)(2) because the record of spoliation was "capable of more than one interpretation"); *Fashion Exch.,* 2019 WL 6838672, at *5 (same).

That the loss of ESI was primarily due to auto-delete procedures rather than affirmative steps taken by Defendant also militates against a finding of an intent to deprive. *Compare Moody*, 271 F. Supp. 3d at 431-32 (concluding that the defendant's erasure of data and disposal of a laptop without ensuring that the data was properly backed up reflected an intent to deprive) *and* CAT3, 164 F. Supp. 3d at 499-500 (finding intent to deprive where alteration of email was caused by "human action," rather than an "automatic or inadvertent computer process") *with Fashion Exch.,* 2019 WL 6838672, at *5 (concluding that the loss of data following a server crash because the data had not properly been backed up did not necessarily reflect an intent to deprive).

****

For the foregoing reasons, I conclude that Defendant's many document retention failures were due to negligence rather than an intent to deprive Plaintiff of ESI. I therefore **DENY** Plaintiff's Spoliation Motion to the extent that it seeks sanctions under Rule 37(e)(2).

d. Sanctions Under Rule 37(e)(1)

Pursuant to Rule 37(e)(1), Plaintiff asks that Defendant be precluded from asserting an after-acquired evidence defense or any equivalent limitation-of-remedies theory premised on selectively preserved documents; and from offering evidence or argument that Plaintiff refused or failed to prospect business opportunities, or that any such alleged failure or refusal justified Plaintiff's PIP or termination. (ECF 50, Pl.'s Reply at 11) Additionally, since Plaintiff's request for a mandatory adverse inference instruction under Rule 37(e)(2) has been denied, Plaintiff asks that

he be permitted to introduce at trial evidence of the loss of documents and to argue the significance of the loss to the factfinder, and that the Court instruct the jury that it may consider such loss, together with all other evidence, in reaching its verdict. (*See* ECF 43, Pl.'s Proposed Order at 35.)

As to Plaintiff's request relating to evidence discovered post-termination that would have independently justified his termination, Plaintiff has made no suggestions about the nature of any lost evidence that refutes Defendant's assertion that it discovered post-termination evidence justifying Defendant's termination (*see* ECF 48-9, June 26, 2023 Email at UNILY000363; ECF 48-10, June 28, 2023 Email at UNILY000603). As a result, Plaintiff has not supported his request that Defendant be precluded from asserting an after-acquired evidence defense or any equivalent limitation-of-remedies theory premised on selectively preserved documents. *See Karsch*, 2019 WL 2708125, at *21 (explaining that to show prejudice the "existing evidence" must "suggest that the spoliated ESI could support the moving party's case"). To be sure, Defendant should not be permitted to offer evidence at trial that it failed to produce to Plaintiff in discovery. Therefore, Plaintiff's application for relief under Rule 37(e)(1) in connection with evidence independently justifying his termination that was discovered post-termination is **DENIED,** without prejudice to his objection at the appropriate time to Defendant's intended trial exhibits on any legally cognizable ground.

Plaintiff has adequately demonstrated that he was prejudiced by Defendant's failure to take reasonable steps to preserve the backup for the ESI stored on his laptop, which he says demonstrated his prospecting efforts, and Miklusak's notes and Teams messages, which Plaintiff claims would not have reflected a conversation in which Plaintiff refused to prospect. As a

result, Plaintiff is entitled to a sanction "no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). Plaintiff's requested sanction – that Defendant be precluded from offering evidence or argument that Plaintiff failed to prospect or that any such failure justified his PIP or termination would overcompensate for the lost ESI – goes farther than necessary. Accordingly, Plaintiff's application for relief under Rule 37(e)(1) in connection with evidence relating to his prospecting is **GRANTED IN PART**, in that Plaintiff may present evidence to the jury that ESI stored on his laptop and in Miklusak's Teams messages and notes was not preserved, and that the failure to preserve that ESI left prejudicial gaps in the record; and Plaintiff may ask Judge Vyskocil to instruct the jury "that it may consider that evidence, along with all the other evidence in the case," in evaluating Plaintiff's claims and Defendant's defenses. *Keurig Green Mountain,* 341 F.R.D. at 528 (quoting Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendments); *see also Lokai Holdings*, 2018 WL 1512055, at *17 (granting the moving party permission under Rule 37(e)(1) to seek a spoliation jury instruction in form to be approved by the district judge).

"Such a sanction (as distinguished from a mandatory or permissive adverse inference instruction) is permitted under Rule 37(e)(1) without any predicate finding of intent to deprive." *Karsch*, 2019 WL 2708125, at *27 (citing Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 amendments); *see also Leidig*, 2017 WL 6512353, at *14 (permitting party to "present evidence to the jury" that the opposing party lost ESI that should have been preserved). This sanction recognizes that Plaintiff suffered prejudice from the loss of evidence that should have been preserved and will "help rectify the evidentiary imbalance," while preserving Judge Vyskocil's "authority to determine the scope of any spoliation evidence to be presented at trial and to

craft any related jury instructions on a full evidentiary record." *Keurig Green Mountain,* 341 F.R.D. at 528.

Similarly, Plaintiff's application in the alternative under Rule 37(e)(1) that he be permitted to introduce at trial the evidence of the loss of the recording of his complaint call on May 31, 2023 and of comparators' quarterly business reviews and to argue the significance of the loss to the factfinder is **GRANTED IN PART,** in that Plaintiff may introduce such evidence of loss and argue the significance of the loss to the factfinder; and Plaintiff may ask Judge Vyskocil to instruct the jury "that it may consider that evidence, along with all the other evidence in the case," in evaluating Plaintiff's claims and Defendant's defenses. *Keurig Green Mountain,* 341 F.R.D. at 528 (quoting Fed. R. Civ. P. 37(e) advisory committee note to 2015 amendments).

**C. Sanctions Under Rule 37(c)**

As relevant here, under Rule 37(c)(1), if a litigant does not provide information required by Rule 26(a) or (e), the litigant may not use the information in connection with a motion or at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts determining whether to preclude evidence consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the [evidence for which preclusion is sought]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the [previously undisclosed evidence]; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). The Second Circuit "has held that preclusion is a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless." *Pal v. N.Y. Univ.*, 06-CV-5892 (PAC) (FM),

2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)).

Plaintiff seeks the following relief under Rule 37(c)(1):

- To remedy Defendant's failure to search for documents reflecting whether it analyzed if Plaintiff's post-return sales quotas were attainable, Defendant should be precluded from offering evidence or argument that it analyzed whether those quotas were attainable (*see* ECF 43, Pl.'s Proposed Order at 34);
- To remedy Defendant's failure to search for communications relating to opportunities listed as lost in Plaintiff's PIP, Defendant should be precluded under Rule 37(c)(1) from offering evidence or argument that any such opportunity was lost because of Plaintiff (*see id.* at 33); and
- To remedy Defendant's alleged failure to search certain sources during the discovery process – Microsoft Teams, text messages, OneDrive files, local device files, and Miller's custodial files – Defendant should be precluded from offering as evidence documents from such sources, even if the documents were produced in discovery, because surrounding contextual materials may not have been produced (*see id.* at 35).

Plaintiff does not argue that he was unaware of the possible existence of these documents, such that he could not have asked Defendant to search for them. And Plaintiff does appear to have asked for these documents in discovery. (*See generally* ECF 40-21, Plaintiff's First Request for Production of Documents; ECF 40-22, Plaintiff's Second Request for Production of Documents.) As to analyses of sales quotas, Fisher-Jeffes testified that she did not believe that Defendant ever prepared a written calculation. (*See* ECF 40-2, Fisher-Jeffes Dep. Tr. at 91:9-13.) If Defendant were to include such analyses in its eventual list of intended trial exhibits, Plaintiff could object at that time.

As to communications about opportunities listed as lost in Plaintiff's PIP and Teams messages, One Drive files, and local device files, Plaintiff did not receive them because the documents were lost: Teams messages were auto-deleted, Plaintiff local device files were

wiped, and his OneDrive backups, were auto-deleted. *See supra* Part IV.B.2.b. As to text messages and Miller's custodial files, it seems likely some were lost because of the gaps in Defendant's litigation hold. *See, e.g.*, *supra* Part IV.B.2.a. Even if, under Rule 37(c)(1), Defendant should have but did not disclose the existence at one time of these categories of documents, there is no harm from the lack of disclosure, since Plaintiff was independently aware of the documents. *See, e.g., Moule v. Winnebago Cnty. Pub. Def.'s Off.*, 2006 WL 8462272, at *3 (N.D. Ill. Dec. 13, 2006) ("Plaintiff cannot claim to have been prejudiced by Defendant's failure to disclose that which the Plaintiff already knew of.").

Any harm arose to Plaintiff out of a failure to produce rather than a failure to disclose. As such, I look at Plaintiff's sanctions request using the analytic framework for a motion under Rule 37(e), which would have required Plaintiff to identify the lost evidence that he claims would have supported his case or undercut Defendant's defenses. *See Karsch*, 2019 WL 2708125, at *21 (explaining that to show prejudice the "existing evidence" must "suggest that the spoliated ESI could support the moving party's case"). He has not done so for communications about claimed lost opportunities. As to the various categories of files – Microsoft teams, text messages, OneDrive files, and Miller's custodial files – Plaintiff's request for sanctions is largely duplicative of his motion under Rule 37(e); the remedies ordered herein based on the motion under Rule 37(e) are sufficient to address the prejudice Plaintiff has identified. I do not believe that preclusion would be an appropriate remedy, since Plaintiff was independently aware of these categories of documents.

Accordingly, Plaintiff's application for relief under Rule 37(c)(1) is **DENIED** without prejudice to his objection at the appropriate time to Defendant's intended trial exhibits on any

legally cognizable ground, including that Defendant failed to produce the intended trial exhibit to Plaintiff in discovery.

## CONCLUSION

For the reasons set forth above, the Spoliation Motion (ECF 39) is **GRANTED IN PART** in that:

1. Plaintiff's application for relief under Rule 37(e)(1) in connection with evidence relating to his prospecting is **GRANTED IN PART**, in that Plaintiff may present evidence to the jury concerning loss of ESI stored on his laptop and in Miklusak's Teams messages and notes, and on the evidentiary gaps left by the failure to preserve that ESI; and Plaintiff may ask Judge Vyskocil to instruct the jury "that it may consider that evidence, along with all the other evidence in the case," in evaluating Plaintiff's claims and Defendant's defenses.
2. Plaintiff's application in the alternative under Rule 37(e)(1) that he be permitted to introduce at trial evidence of the loss of the recording of the 42-minute complaint call of May 31, 2023 and of comparators' quarterly business reviews and to argue the significance of those losses to the factfinder is **GRANTED IN PART,** in that Plaintiff may introduce such evidence and argue the significance of those losses to the factfinder; and Plaintiff may ask Judge Vyskocil to instruct the jury "that it may consider that evidence, along with all the other evidence in the case," in evaluating Plaintiff's claims and Defendant's defenses.

Plaintiff's application for a mandatory adverse inference instruction pursuant to Rule 37(e)(2) in connection with five specified categories of lost ESI is **DENIED**.

The Spoliation Motion is **DENIED** in all other respects, without prejudice to Plaintiff objecting at the appropriate time to Defendant's intended trial exhibits on any legally cognizable ground, including that Defendant failed to produce the evidence to Plaintiff in discovery.

Plaintiff shall file any application for attorneys' fees in connection with the Spoliation Motion by **October 13, 2026.**

The Clerk of Court is respectfully requested to terminate ECF 39.

DATED: October 5, 2026
New York, New York

SO ORDERED.

**ROBYN F. TARNOFSKY**
United States Magistrate Judge